**Leslie MENDEZ, Plaintiff,**

v.

**Mark GEARAN, Director of the
Peace Corps, Defendant.**

**No. C 95–4075 TEH.**

United States District Court,
N.D. California.

Feb. 13, 1997.

Kent Jonas, Graham & James, LLP, San Francisco, CA, Vicki Laden, Employment Law Center, Legal Aid Society of San Francisco, San Francisco, CA, for Leslie Mendez.

John H. Hemann, U.S. Attorney's Office, San Francisco, CA, Kirby Mullin, U.S. Peace Corps, Washington, DC, for Mark Gearan.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter came on for oral argument before the Court on February 10, 1997, upon the parties' cross motions for summary judgment.

## I. FACTUAL BACKGROUND

In early 1994, plaintiff, Leslie Mendez, applied for a volunteer position in the Peace Corps. After favorable interviews and a recommendation from the Peace Corps personnel, plaintiff was extended an invitation to serve as an environmental educator in Panama. Her placement, however, was contingent upon final medical and legal clearances.

Plaintiff was given a medical history form to complete and she submitted it to the Peace Corps in July, 1994. The form contained a number of questions regarding the applicant's mental and emotional health and plaintiff responded to each by indicating that she had no history of psychiatric treatment. In November, 1994, however, plaintiff asked the Peace Corps medical screening nurse, Carol Sutton, for a supply of the anti-depressant, Zoloft. Ms. Sutton responded by requesting a medical evaluation from plaintiff's physician and upon receipt conferred with the Peace Corps' mental health consultant, Marilyn Krasner–Bono.

The medical evaluation stated that plaintiff suffered from dysthymia—a chronic form of mild depression, that plaintiff had taken the drug Zoloft in the past, and that plaintiff had participated in sessions regarding her depression with a therapist. Bono and Sutton determined that plaintiff's condition required her medical clearance to be deferred and informed plaintiff that she would not be able to serve as a Peace Corps Volunteer until she could demonstrate that there was no risk of her experiencing depression. When plaintiff inquired into how she could challenge the decision, she was given the name and address of the Peace Corps Medical Director, Dr. Gootnick. Plaintiff did not contact Dr. Gootnick and in late 1995, filed this action for discrimination on the basis of disability under the Rehabilitation Act.

After this Court denied defendant's motion to require plaintiff to proceed in this action under the Administrative Procedures Act, the parties filed the present motions for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985); Fed. R.Civ.P. 56. Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. *Id.* A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, she must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which her opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court ... that there is an absence of

evidence to support the nonmoving party's case." *Id.*

If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is some genuine issue for trial" in order to defeat the motion. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; Fed.R.Civ.P. 56(e). A grant of summary judgment is reviewed *de novo* by the appellate court; a denial of summary judgment is reviewed for an abuse of discretion. *U.S. v. 5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1361 (9th Cir.1986).

### III. DISCUSSION [1]

### A. REQUIREMENTS OF THE REHABILITATION ACT

■ A plaintiff bringing a disability discrimination claim under section 504 of the Rehabilitation Act must show that he/she is (1) an individual with a disability as defined by the Act, (2) otherwise qualified for the position sought, (3) has been excluded from the position solely because of his/her disability, and (4) the position exists as part of a program or activity receiving federal financial assistance.[2] *See, e.g., Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990).

#### i. Individual With a Disability

The first requirement of the Rehabilitation Act, that plaintiff be an "individual with a disability," is fulfilled if a plaintiff demonstrates that he/she is a person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. 706(8)(B). Plaintiff asserts that the record, viewed in the light most favorable to the defendant, establishes that plaintiff fulfills the first and third definitions.

#### a. Impairment Substantially Limiting A Major Life Activity

The first definition of an individual with a disability requires three showings: (1) that the individual suffers from an impairment recognized by the act, (2) that the impairment affects major life activities, and (3) that the impairment substantially limits the plaintiff's ability to perform those activities. *See* 45 C.F.R. 84.3(j); 29 C.F.R. 1630.2(g).

■ The record demonstrates that plaintiff suffers from an impairment cognizable under the Rehabilitation Act. Plaintiff has been diagnosed by her own doctors as having probable dysthymia. Pl's Ex. C at 20. The defendant's expert has concluded that plaintiff suffers from recurrent major depressive episodes, and may also meet the criteria for dysthymia. Schatzberg Decl. at 11. Dysthymia and recurrent depression are mental impairments within the meaning of the Rehabilitation Act. *See e.g., Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12 (1st Cir.1997).

To fulfil the second requirement, plaintiff must demonstrate that her dysthymia or recurrent depression implicates "major life activities." Courts and agencies [3] interpreting

---

**1.** As a preliminary matter, the Court addresses defendant's skeletal argument that there is no case or controversy between plaintiff and defendant. The defendant asserts that no obstacle stands between plaintiff and the relief she seeks—reconsideration of her application. Plaintiff, however,,seeks more than the mere reconsideration defendant offers; plaintiff seeks a medical evaluation that does not violate the Rehabilitation Act. A decision for plaintiff in this Court will necessarily impel the conclusion that defendant did not legally, either in procedure or substance, assess plaintiff's application. Any reevaluation, therefore, would occur in a manner consistent with an order entered by this Court. Consequently, plaintiff has demonstrated that a favorable decision will redress the plaintiff's alleged injury—an erroneous or improper evaluation of her medical eligibility. *See Lujan v. De-*

*fenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

Furthermore, defendant has forwarded no basis upon which this Court should reconsider its Order of November 21, 1996.

**2.** The parties do not dispute that the fourth factor is met in this action. The Peace Corps is a program conducted by an Executive agency, and as such is subject to the requirements of the Rehabilitation Act. *See Lane v. Pena,* — U.S. ——, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *Wisher v. Coverdell,* 782 F.Supp. 703, 707 (D.Ma. 1992).

**3.** The Supreme Court has said that "[i]n determining whether a particular individual is handicapped as defined by the Act, the regulations promulgated by the Department of Health and Human Services are of significant assistance ...

the Rehabilitation Act have defined major life activities as including "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. §§ 1613.702(c) (EEOC regulation defining "major life activities"); *Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir.1996). It is apparent from the record that plaintiff's depression has affected her ability to work, learn, socialize, sleep, and exercise; all of which are major life activities that are integral to the average person's daily existence. Pl's Facts ¶¶ 12–16; D's Facts Response ¶¶ 12–13.

Finally, plaintiff makes the third showing only if her impairment that affects a major life activity is "substantially limiting," i.e., the plaintiff is unable to perform a major life activity that an average member of society can perform, or the plaintiff is significantly restricted as to the condition, manner, or duration under which he/she can perform the activity relative to the average member of society. *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162 n. 5 (5th Cir. 1996) (*citing* 29 C.F.R. § 1630.2(j)(1)).

 The touchstone in determining whether the Rehabilitation Act will recognize an impairment is the *extent* to which the condition limits the affected major life activities. *See Knapp v. Northwestern University*, 101 F.3d 473 (7th Cir.1996). This inquiry is particularly fact-specific and especially difficult in this context because the nature of plaintiff's impairment is not consistent from day-to-day. Plaintiff does not have a continuing disability like blindness or a lost limb; instead her impairment can be very severe one day and virtually non-existent the next. *See, e.g.*, P's Facts ¶¶ 12–16 (discussing the effects of plaintiff's *spells* of depression).

The record contains conflicting evidence regarding the severity of the effects of plaintiff's depression. On the one hand, during spells of depression plaintiff has cut back on regular physical activity, sleeps more, has no interest in socializing, and has difficulty calling people on the phone; during one episode of depression in college she had difficulty waking up, studying, and concentrating, possibly causing her to drop a class. Pl's Facts ¶¶ 12–16; D's Facts Response ¶¶ 12–13. On the other hand, the record demonstrates that plaintiff has exhibited great achievement in both learning and work and that she has not been significantly limited in her ability to interact socially or participate in physical exercise. *See* Mullen Decl. Ex. A. Plaintiff has "excelled academically, she is trilingual, [and] she has successfully lived and studied abroad for extended periods...." FAC ¶ 7.

While the Court has no doubt that an impairment with fluctuating effects such as depression can, in some circumstances, substantially limit a major life activity, the Court cannot find, viewing the record in the light most favorable to the defendant, that plaintiff's depression substantially limits any of her major life activities. Plaintiff, therefore has failed to demonstrate that, as a matter of law, she is an individual with a disability for purposes of the Rehabilitation Act. At the same time, however, plaintiff has presented *some* evidence to support a finding that she is disabled. Accordingly, the Court does not grant summary adjudication for either party on this issue.

b. Regarded as Having A Disability

 Plaintiff alternatively argues that she meets the third definition of a person with a disability because the Peace Corps regarded her as having a substantial impairment.[4]

 An individual is regarded as disabled if the impairment, whether real or not, is

---

[and] provide an important source of guidance on the meaning of § 504 [of the Rehabilitation Act]." *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987).

**4.** The Department of Health and Human Services defines the phrase "regarded as having an impairment" as (1) having an impairment that is treated as constituting an impairment that sub-

stantially limits major life activities, (2) having an impairment that substantially limits a major life activity because of the attitudes of others toward such an impairment, or (3) not having an impairment but being treated as having such an impairment. *See* 45 C.F.R. 84.3(j)(2)(iv); 29 C.F.R. 1630.2(1) (EEOC's similar definition of "regarded as having impairment").

perceived as substantially limiting a major life activity. *See, e.g., Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 913 (11th Cir.1996); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995). Plaintiff asserts that the Peace Corps' determination that plaintiff was medically unfit to perform any kind of overseas service reveals that the Peace Corps regarded plaintiff as having an impairment that substantially limited her ability to work. P's Mot. at 8–9. Defendant responds with two basic assertions: (1) defendant regarded plaintiff as *temporarily* unable to work and (2) defendant regarded plaintiff as unable to perform a *limited scope* of work. D's Opp. at 12–13.

■ The first factor defendant urges this Court to examine is the Peace Corps' perception of the likely duration of the impairment. If a defendant perceives plaintiff as having a minor, temporary condition, the plaintiff is not covered by the Act. *See Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996) ("Several courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA.");[5] *Soileau,* 105 F.3d at 16. ("Another factor to be considered is the expected duration of the impairment ... [29 C.F.R. § 1630.2(j)(2)(ii) ]."); *Wilmarth v. City of Santa Rosa,* 945 F.Supp. 1271, 1276 (N.D.Cal.1996). If, however, the defendant considers the impairment as "significant," and potentially long-term, the Act's coverage is triggered. *See Soileau,* 105 F.3d at 16.

In this case, it is apparent from the record that the Peace Corps did not treat plaintiff as having a *typical* temporary condition like a broken limb, sprained joint, concussion, appendicitis, or influenza. *See* 29 C.F.R. § 1630 (EEOC regulation that lists examples of "temporary non-chronic impairments of short duration"); *Norris v. Allied–Sysco Food Services, Inc.,* 948 F.Supp. 1418

(N.D.Cal.1996) (compilation of cases where courts found various impairments to be temporary, including four month long psychological disorder, curable back injury, and knee injury). The evidence demonstrates, instead, that the Peace Corps considered plaintiff's impairment to be potentially long-term.

When the Peace Corps deferred plaintiff, they did so for "a time unknown," which meant that "if new evidence was presented to make a change in the decision, that could be one day, two days, five days, five years...." D's Facts ¶ 30. Defendant informed plaintiff that she would have to wait at least a year before reapplying to the Peace Corps.[6] P's Reply at 7. The Peace Corps' mental health consultant, Marilyn Krasner–Bono did not regard plaintiff's impairment as minor or temporary. Her recommendation to defer the plaintiff was based on the information contained "in her clinical assessment that indicated ... that Ms. Mendez was still in the process of being stabilized in a chronic depression which had an acute episode of six months duration at least, and perhaps an earlier episode of some mental health problem." Bono Depo. at 141–2. The evidence reveals that the Peace Corps assumed that the impairment was significant and that as long as plaintiff potentially required treatment for clinical depression she would be barred from service. *See* Pl's Reply at 7; D's Fact ¶ 28, 32. Furthermore, defendant continues to emphasize the significant nature of plaintiff's impairment by analogizing it to "chronic conditions" such as asthma or diabetes. D's Opp. at 15.

The sole countervailing piece of evidence tending to show that defendant regarded plaintiff's disability as temporary was the decision to defer instead of disqualify plaintiff. That limited circumstantial evidence, standing against the rest of the record, does

---

**5.** "The ADA defines disability substantially the same as the Rehabilitation Act of 1973 defines handicap ... so cases interpreting either will be instructive for this analysis." *Wooten v. Farmland Foods,* 58 F.3d 382, 385 n. 2 (8th Cir.1995).

**6.** The fact that the defendants excluded plaintiff from reapplying for a year weighs toward finding that the defendants considered plaintiff's impairment to be substantially limiting. "... [A]n im-

pairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least *several months*. Such conditions, if severe, may constitute disabilities." *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 31 (1st Cir.1996), *citing* EEOC Compliance Manual § 902.4, ¶ 6884, p. 5319 (1995).

not raise a triable issue of fact as to whether defendant regarded plaintiff's impairment as minor and temporary. Consequently, the Court finds that the Peace Corps' perception of the expected duration of the impairment supports the finding that defendant regarded plaintiff as having an impairment that substantially limited her ability to work.

 Defendant further argues that the evidence regarding the scope of jobs from which plaintiff was excluded demonstrates that the Peace Corps did not perceive plaintiff as substantially impaired. "For an impairment to substantially limit one's ability to work, it must not merely prevent one from working at a particular job; it must prevent one from working at a class of jobs or a broad range of jobs in various classes." *Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir.1996); 29 C.F.R. 1630.2(j)(3)(i) ("[T]he term substantially limits [in the context of work] means significantly restrict in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.... The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

Defendant excluded plaintiff from any position in any overseas country where the Peace Corps operates and suggested that plaintiff try to get a job in this country. D's Facts ¶¶ 37–38; Pl's Facts ¶¶ 60–61. Defendant regarded plaintiff's impairment as preventing her from performing any non-domestic job with the Peace Corps. Pl's Facts ¶ 53. This exclusion is not of the nature that courts have found to be insubstantial. *See Partlow v. Runyon*, 826 F.Supp. 40, 43 n. 2 (D.N.H.1993) (cataloging cases where impairment affected only limited class of jobs). The Peace Corps decision that plaintiff was unable to work in any one of the 93 countries in which the Peace Corps operates is further

evidence that the Peace Corps considered plaintiff's impairment as substantially limiting her ability to work.

As stated above, an individual falls within the ambit of the Rehabilitation Act if he/she is regarded as having a physical or mental impairment which substantially limits one or more of such person's major life activities. 29 U.S.C. 706(8)(B). The record, in the light most favorable to the defendant, demonstrates that the Peace Corps regarded plaintiff as having a mental impairment that substantially limited her ability to work.[7]

### ii. Otherwise Qualified

 The second requirement for an individual proceeding under the Rehabilitation Act is a showing that he/she is "otherwise qualified"[8] for the position sought. An otherwise qualified person is one who is able to meet, with or without reasonable accommodation, all of a program's requirements in spite of his/her handicap. *See, e.g., Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); 29 C.F.R. § 1630.2(m); *accord Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17.

 Defendant asserts that plaintiff was not qualified to serve as a Peace Corps volunteer because placing her in a position overseas would have exposed her to an "unreasonable risk of harm." D's Opp. at 16–17. It is clear that a likelihood of potential harm can serve as a basis for an employer to deny a position to a disabled applicant. "[I]n some cases, a job requirement that screens out qualified handicapped individuals on the basis of possible future injury is necessary." *Mantolete v. Bolger*, 767 F.2d 1416, 1422 (9th Cir.1985); *Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir.1991) ("... [A] significant risk of personal injury can disqualify a handicapped individual from a job if the em-

---

**7.** This finding obviates the need for the Court to address the third requirement of the Rehabilitation Act: that the plaintiff has been excluded from the position solely because of his/her disability. The parties do not dispute that the Peace Corps decided to defer plaintiff's medical clearance solely on the basis of plaintiff's impairment. D's Facts ¶ 29.

**8.** "Otherwise qualified" is actually a misnomer because, read literally, it precludes employers from considering the effects of the disability on plaintiff's fitness for the position. A more apt phrase would be "nonetheless qualified." *See Ward v. Skinner*, 943 F.2d 157, 161 (1st Cir. 1991).

ployer cannot eliminate the risk."); *E.E. Black Ltd. v. Marshall,* 497 F.Supp. 1088, 1104 (D.Haw.1980).

■■■■■ When an employer excludes a disabled individual on the basis of a risk of harm to him/herself or others, the employer must make an individualized inquiry into whether there is "a reasonable probability of substantial harm." *Mantolete,* 767 F.2d at 1422. To prevent the exclusion of qualified individuals solely on the basis of archaic attitudes and misinformed stereotypes, the Rehabilitation Act requires the evaluation of potential harm to include "the gathering of substantial information by the employer.... [A]n employer must gather all relevant information regarding the applicant's work history and medical history and independently assess both the probability and severity of potential injury." *Mantolete,* 767 F.2d at 1422–23. Furthermore, if an employer determines that there is a reasonable probability of substantial harm, the "employer has a duty under the Act ... to determine what accommodations are necessary to enable the applicant to perform the job safely." *Mantolete,* 767 F.2d at 1423.

■■■■ After gathering all the relevant information, the employer's scrutiny of plaintiff's disability and history and possible accommodations must be thorough. *See Knapp,* 101 F.3d at 483 ("Any physical qualification based on risk of future injury must be examined with special care if the Rehabilitation Act is not to be circumvented, since almost all disabled individuals are at a great-

er risk of injury. *Bentivegna v. United States Dept. of Labor,* 694 F.2d 619, 622 (9th Cir.1982).").

While the Court questions the limited role of courts described by the Seventh Circuit in the *Knapp* opinion,[9] it does concur that when reviewing a Rehabilitation Act claim a court must "make sure that the decision-maker has reasonably considered and relied upon sufficient evidence specific to the individual and the potential injury." *Knapp,* 101 F.3d at 484.

■■■■ Where a decision-maker excludes an individual on the basis of a disability without gathering and carefully examining the relevant evidence regarding the disability and the likelihood of harm, a court must assume that the decision-maker based the exclusion on unfounded presumptions about the disability. "Individuals with handicaps are all too often excluded from school and education programs, barred from employment or are under-employed because of archaic attitudes and laws...." S.Rep. 93–1297, 93d Cong.2d Sess. 32. The injuries caused by these types of rote generalizations are precisely what the Rehabilitation Act was intended to combat. "The Act is carefully structured to replace ... reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments." *Arline,* 480 U.S. at 284–85, 107 S.Ct. at 1129. Consequently, when a decision-maker excludes an individual on the basis of his/her disability without relying on substantial evidence of whether the individu-

---

9. The *Knapp* decision would not have the Court make an independent determination of whether substantial risk and severity of injury is *actually* risked. *Knapp,* 101 F.3d at 484. Instead, *Knapp* holds that the "place of the court in such cases is to make sure that the decision-maker has reasonably considered and relied upon sufficient evidence specific to the individual and the potential injury, not to determine on its own which evidence it believes is persuasive.", *Knapp,* 101 F.3d at 484. While an examination into the evidence relied upon by a decision-maker is important, a district court must also be permitted to determine whether "in light of [a plaintiff's] work history and medical history, employment of her would pose a reasonable probability of substantial harm." *Mantolete,* 767 F.2d at 1424.

The *Knapp* Court would allow an individual to be excluded from a position solely on the basis of

the risk of severe injury if the decision to exclude was supported by substantial evidence. Such a standard violates the very purpose of the Rehabilitation Act: *no* individual should be excluded from a position when he/she can meet all of a program's requirement's in spite of his/her disability. *See Davis,* 442 U.S. at 406, 99 S.Ct. at 2367. Consequently, if a decision-maker *unnecessarily* excludes an individual on the basis of a disability, that decision should be overturned, regardless of the sufficiency of the evidence upon which it was based. A trier of fact, therefore, ought be permitted, under the Rehabilitation Act to determine if risk of injury caused by a disability is such that the individual has been needlessly excluded from participating in an activity, program, or job.

**1528**

al is otherwise qualified with, or without, reasonable accommodation, that decisionmaker violates the Rehabilitation Act.

In this case the Peace Corps made little effort to gather all the relevant information regarding the plaintiff's history and no effort to determine what accommodations were necessary to allow the plaintiff to perform her job safely. When informed that plaintiff would need a supply of Zoloft while in Panama, the Peace Corps had her fill out an evaluation form. D's Facts ¶ 27. Plaintiff's psychologist completed the evaluation stating that plaintiff suffered from dysthymia, that plaintiff had been irregularly taking Zoloft since February 1994, and that plaintiff had participated in occasional therapy sessions. D's Facts ¶ 28. When reviewing plaintiff's file the medical screening nurse did.not consult the application materials that would have included, for example, plaintiff's "education background, work history . . . personal and travel experiences." P's Facts ¶ 41. Instead, the medical screening nurse based her decision merely on her determination that the screening guidelines required deferral. P's Facts ¶ 45.

The screening nurse referred the case to the Peace Corps' mental health consultant, Marilyn Krasner–Bono. While Krasner–Bono recognized that the psychologist's assessment of plaintiff's condition was sparse and not fulsome, she did no further investigation. P's Facts ¶¶ 46–47; D's Facts ¶ 29. Krasner–Bono did not attempt to review plaintiff's history of work and functional capacity, even though she concedes that it would be important information to know. P's Facts ¶¶ 48, 50. In fact, Krasner–Bono never spoke with the plaintiff. P's Facts ¶ 49.

Neither Krasner–Bono nor Sutton looked beyond the scant details of the psychologist's evaluation before they concluded that plaintiff's medical condition required deferment. D's Facts ¶¶ 29, 35; P's Facts ¶¶ 41–58.

The record clearly demonstrates that the Peace Corps failed to meet its duty to make a thorough investigation into the reasonable probability of substantial harm if plaintiff were placed in a position overseas. The evidence further reveals that the Peace Corps made no effort to examine whether the plaintiff could be protected from a reasonable probability of harm by some reasonable accommodation.[10] As such, the Court finds as a matter of law that the Peace Corps has violated the Rehabilitation Act.[11] Accordingly, the Peace Corps shall reconsider plaintiff's medical eligibility in a manner consistent with the requirements of the Rehabilitation Act.

**B. NATURE OF THE SCREENING PROCESS**

■ The record demonstrates that defendant's failure to make an individualized inquiry into the nature of plaintiff's impairment and possible accommodations was, in part, caused by the Peace Corps somewhat mechanical application of their medical screening guidelines. Plaintiff therefore requests that this Court declare that the Peace Corps be enjoined from utilizing the dysthymia screening guideline to determine medical eligibility for Peace Corps service. P's Proposed Order; FAC, Prayer for Relief.

Defendant does not contest that the first step of the Peace Corps' medical screening process entails the application of a set of guidelines from which the screening nurse

**10.** The Court notes that not only did the Peace Corps utterly fail to investigate possible accommodations, but the record demonstrates that plaintiff may have been easily accommodated. There is currently a Peace Corps volunteer in Panama with depression who is being provided with a drug similar to Zoloft. P's Facts ¶ 34.

**11.** This finding obviates the need to address the substance of the second requirement of the Rehabilitation Act—whether the evidence actually demonstrates that the plaintiff is qualified for a position as a Peace Corps volunteer in spite of her impairment, or whether the evidence demonstrates that plaintiff, with reasonable accommo-

dation, is qualified for a position as a Peace Corps volunteer. Such an inquiry is legally unnecessary and would be pointless in light of the fact that ". . . plaintiff is not seeking a court order directing the Peace Corps to clear her medically. . . . [S]he is seeking a court order directing the Peace Corps to place her application for service in the Peace Corps where it was before it was deferred . . . and to have the Peace Corps evaluate her medical qualifications in conformity with the requirements of section 504 of the Rehabilitation Act." Stipulation of Jan. 7, 1997.

does not have the authority to deviate. Miani Depo. at 61. As the guidelines do not allow for a individualized assessment of the nature and effect of the disability or possible accommodations, the Court finds that the first step of the medical screening process does little to ensure compliance with the Rehabilitation Act.

Defendant notes, however, that the second step of the screening process is a more individualized review by professionals with particular areas of expertise.[12] Miani Depo at 50. These medical experts determine whether the application of the guidelines has led to a medically appropriate result. Bono Depo. at 47–48. As noted above, in this case the individual review by the Peace Corps' mental health expert was wholly inadequate to meet the requirements of the Rehabilitation Act. However, if in an individualized inquiry, the Peace Corps were to gather all relevant information regarding the applicant's work and medical history and determine what accommodations are necessary to enable the applicant to be placed as a Peace Corps volunteer it may meet the requirements of the Rehabilitation Act. *See Mantolete,* 767 F.2d at 1422–23. The second step in the screening process, therefore, does provide the *potential* for the type individualized assessment required by the Rehabilitation Act; however, as this case demonstrates the process does not *require* such a particularized individual assessment.

The third step in the medical screening process is an appeals process that allows the applicant to challenge a deferral or disqualification on the basis of disability. Alden Decl. ¶ 2, Ex. A. The appeal process shifts the burden to the applicant to present relevant information and request accommodations. The Rehabilitation Act, however, requires the Peace Corps to gather the evidence relevant to the applicant's impairment and necessary accommodations. *See Mantolete,* 767 F.2d at 1422–24. Permitting an applicant to appeal an adverse decision, therefore, does not help bring the Peace Corps' medical screening process into compliance with the Rehabilitation Act.

The Court cannot hold as a matter of law, that the Peace Corps medical screening process violates the Rehabilitation Act whenever it evaluates an applicant with dysthymia. The second step of the process provides the potential for the gathering of information and individual review necessary for compliance with the Act. The Court is troubled by the fact that the second step of the Peace Corps' screening process is not mandatory. The inadequacies of the first and third steps would likely mandate a finding that the Peace Corps does not comply with the Rehabilitation Act whenever it excludes an individual on the basis of an impairment without the second-step review. To ensure compliance with the Rehabilitation Act the Peace Corps must include in its medical screening process the gathering of all relevant information regarding the plaintiff's history and an individualized review of the disability and possible accommodations; however, that does not mean that the use of screening guidelines as a threshold sorting device and the existence of an appeals process as an extra precaution violate the Rehabilitation Act. Consequently the Court will not enjoin the Peace Corps from use of the dysthymia screening guidelines as part of its medical eligibility review.

## IV. CONCLUSION

Accordingly and in a manner consistent with this opinion, plaintiff's motion for summary judgment is granted in part and denied in part, and defendant's motion for summary judgment is granted in part and denied in part.

The Court orders the Peace Corps to reevaluate its decision to medically-defer plaintiff's application. The reevaluation shall include an individualized examination of whether plaintiff is qualified, in spite of her impairment, to serve as an overseas Peace Corps volunteer. That individualized examination shall be based on all the relevant evidence of plaintiff's medical and work history. If the Peace Corps determines that placing plaintiff overseas creates a reason-

---

**12.** It appears from the record that this second step is optional and only occurs if the screening

nurse requests review by the expert. Miani Depo at 50.

able probability of substantial harm, or that on some other basis, plaintiff is not otherwise qualified to be a Peace Corps volunteer, the Peace Corps shall determine what accommodations are necessary to make placement of plaintiff safe. If the Peace Corps determines that it is unable to accommodate plaintiff, the Peace Corps will bear the burden of demonstrating why accommodation is impossible.

**IT IS SO ORDERED.**