Gilberto QUIÑONES VÁZQUEZ, Plaintiff,

v.

SALVATION ARMY, INC.; Juan C. Alarcón, Defendants.

Civil No. 01–2148(JAG).

United States District Court, D. Puerto Rico.

Jan. 17, 2003.

Victor P. Miranda–Corrada, San Juan, PR, for Plaintiff.

Carlos F. Lopez–Lopez, Santurce, PR, for Defendants.

1. Juan Alarcón, one of plaintiff's supervisors at the Salvation Army, is also a named defendant in this case.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff Gilberto Quiñones Vázquez (hereinafter "Quiñones") filed a complaint on August 27, 2001, alleging that his former employer, defendant Salvation Army,[1] violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.,* (hereinafter "ADA"), when it fired him in June 2000. Specifically, Quiñones argues that the Salvation Army violated the ADA's prohibition on discrimination based on a perceived disability. 42 U.S.C. § 12102(2)(C). Quiñones also brought forth supplemental state law claims.[2]

Presently before the Court is defendants's motion for summary judgment with respect to the ADA claim. (Docket No. 20). After a careful review of the record, the Court finds that Quiñones has failed to raise a triable issue of fact with respect to disability under Title I of the ADA. Nonetheless, Quiñones has set forth enough evidence to sustain a retaliation claim under Title V of the ADA.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed

2. The Court has an independent ground for jurisdiction on plaintiff's state law claims due to the parties's diversity of citizenship.

factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). A fact is material if it might affect the outcome of the suit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995); *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). Nonetheless, in employment discrimination cases, " 'where elusive concepts such as motive or intent are at issue,' [the aforementioned] standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1,5 (1st Cir.2000)(citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)); *See also Súarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

## FACTUAL BACKGROUND

Quiñones, who has a BBA degree from the Pontificia Universidad Católica of Ponce,[3] began working at the Salvation Army on September 23, 1997, as Development and Community Relations Director.[4] On May 22, 2000, as a result of the stress and tension Quiñones felt at the office, he made use of his health plan's employee assistance program and sought treatment at the Instituto Psicoterapéutico de Puerto Rico (hereinafter "INSPIRA"). (Docket No. 20, Exhibit 1, at 34–39; Exhibit 5.) Quiñones notified Captain Droz, a supervisor, of his intention to take a two-week leave, and submitted a medical certificate to that effect. (*Id.,* Exhibit 1, at 42; Exhibit 5.) Quiñones received outpatient psychological and psychiatric treatment at INSPIRA from May 22 through June 2, 2000. (*Id.,* Exhibit 6.)

Quiñones candidly admits that after the two-week treatment at INSPIRA he felt like a new person. (*Id.,* Exhibit 1 at 41.) Upon his return to work on June 5, 2000, defendants requested that plaintiff produce a medical certificate allowing him to return to work without restrictions. (*Id.,* Exhibit 6.) The following day, on June 6, 2000, plaintiff produced the medical certificate and returned to his duties.[5] It is undisputed that plaintiff was not diagnosed with any condition or illness at INSPIRA.

Plaintiff contends that after he arrived from his two-week leave he found out that either one or both of his supervisors (Droz and Alarcón[6]) had divulged to others that

3. Quiñones completed his graduate studies at the University of Phoenix in June 2002, and now has a Masters in Business Administration.

4. The duties of the Development Director position are undisputed and include: the administration of the Development Division Program and activities; the direct mail/solicitation of individual major donors, corporations and foundations in Puerto Rico and the Virgin Islands; strategic planning for long range planning and capital gain development;

advisory organization development; and consultation regarding United Way relationships.

5. Plaintiff alleges that he was unable to return to work on June 5, 2000 due to Captain Droz's order that he produce the medical certificate prior to returning to his duties. Plaintiff obtained the certificate late in the afternoon of June 5, and thus returned to work the following day with the appropriate medical certification.

6. Juan Alarcón was the Salvation Army's Divisional Commander at the time of the events

he had sought counseling for his "stress" related symptoms.[7] Plaintiff further claims that it was rumored in the office that he had been attending a substance detoxification program. Quiñones asserts that he formally presented a written grievance complaining about defendants's alleged violation of his right to privacy. The record contains no evidence showing the existence of the alleged complaint.

Soon after plaintiff's return to work, co-defendant Alarcón learned that plaintiff had been soliciting funds without properly identifying the Salvation Army logo in the mailing. (Docket No. 20, Exhibit 7, at 18–19.) The parties have different interpretations of the events that transpired after Alarcón allegedly found fault with plaintiff's mailing methods.

Defendants contend that Alarcón believed Quiñones's transgression to be a major fault, which coupled with his unsatisfactory job performance[8], prompted Alarcón's decision to dismiss plaintiff on June 13, 2000. Quiñones explained to Alarcón that the practice of mailing solicitation letters without the Salvation Army's logo had been approved by the former Division Secretary, Capt. Diaz. Once Alarcón corroborated that Quiñones's assertion was true, he retracted himself by setting aside the dismissal. (Docket No. 20, Exhibit 1, at 69–73). Quiñones asserts that

he was bewildered when confronted with a dismissal followed by an immediate reinstatement, and thus expressed his intent to seek counsel. When he did so, however, his supervisors reinstated the dismissal. (Docket No. 20, Exhibit 1, at 73–74; Exhibit 7, at 23–29.)

Thereafter, plaintiff was treated by Dr. Juan A. Rivera Bustamante, a psychiatrist, from August 23, 2000 until December 2000, when he started working for MDA de Puerto Rico. Dr. Rivera Bustamante diagnosed plaintiff as suffering from a major depression with anxiety. (Docket No. 20, Exhibit 8.)

## ANALYSIS

### I. Quiñones's claim under Title I of the ADA

In order to recover under the ADA for employment discrimination, Quiñones must establish that: "(1) he suffers from a disability as defined by the ADA (in this instance, that the [Salvation Army] regarded him as being disabled) but that (2) he was nevertheless qualified for the job—that is, able to perform its essential functions either with or without reasonable accommodation—and, finally, that (3) [the Salvation Army] discharged him, in whole or in part, because of his protected disabil-

---

in question.

**7.** In an effort to establish that there were rumors at the office about his "condition" and speculation as to his two-week leave of absence, Quiñones presents a memo written by one of his subordinates on June 5, 2000, the date on which he returned from his leave. The memo, written by Wanda Rodríguez and directed to Capt. Droz, recounts an incident between Rodríguez and Quiñones, in which he allegedly raised his voice during an incident on May 17, 2000. Given that the incident occurred prior to plaintiff's leave of absence, the Court finds the memo immaterial to the present inquiry.

**8.** It should be noted that there is no evidence on the record to support defendants's contention that Quiñones's job performance was unsatisfactory. The only time plaintiff's work performance was evaluated, in 1998, his supervisor Captain Diaz, deemed plaintiff's performance as excellent. Neither Droz nor Alarcón ever evaluated plaintiff's job performance. However, whether or not Quiñones's job performance was satisfactory is immaterial to the present inquiry of whether he has established enough evidence for the Court to find a triable issue with respect to disability.

ity." *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir.1999)(citing *Feliciano v. Rhode Island,* 160 F.3d 780, 784 (1st Cir.1998)). In this Circuit, the burden of proof on all three prongs is on the plaintiff. *See Tardie v. Rehabilitation Hospital,* 168 F.3d 538, 541 (1st Cir.1999); *Katz v. City Metal Co.,* 87 F.3d 26, 30 (1st Cir.1996). After a careful review of the record, the Court concludes that Quiñones has failed to carry his burden of producing enough evidence as to the first prong of the inquiry, i.e., whether the Salvation Army regarded him as disabled under the ADA.

Under the statutory scheme, an individual is defined as disabled if he has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2).[9] The EEOC has promulgated several regulations in an attempt to define the ADA's section 12102(2)(C)("regarded as disabled"). *See* 29 C.F.R. § 1630.2 (1998). The Supreme Court has explained that an employee can be *"regarded as"* disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162, 1169 (1st Cir.2002)(citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). Plaintiff seems to argue that the Salvation Army regarded him as disabled due to the fact

that he took a two-week leave of absence to deal with work-related stress symptoms. In essence, plaintiff alleges that defendants's attitude towards him changed drastically upon his return to work due to the fact that suddenly he was regarded as disabled.

Under section 12102(2)(C), "the decisive issue is the employer's *perception* of his ... employee's alleged impairment." *Jacques v. DiMarzio, Inc.,* 200 F.Supp.2d 151, 159–60 (E.D.N.Y.2002)(citing *Giordano v. City of N.Y.,* 274 F.3d 740, 748 (2d Cir.2001)). "A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the ADA." Bailey,* 306 F.3d at 1169 (citing *Giordano,* 274 F.3d at 748). In other words, plaintiff must provide some evidence that defendant believed, rationally or otherwise, that plaintiff had a physical impairment substantially limiting a major life activity. *See Thompson v. Holy Family Hosp.,* 121 F.3d 537, 541 (9th Cir.1997). "If a defendant perceives plaintiff as having a minor, temporary condition, the plaintiff is not covered by the Act." *Mendez v. Gearan,* 956 F.Supp. 1520, 1524 (N.D.Cal.1997).

■ Quiñones has failed to provide sufficient evidence to create a triable issue of fact as to whether he was regarded as disabled by the Salvation Army under § 12102(2)(C). First, Quiñones has not clearly stated what his disability is. Quiñones seems to argue that his two-week leave of absence was a result of work-related "stress." Quiñones also asserts that what he thought was "stress" was

---

**9.** Even though plaintiff Quiñones has hinted that he was disabled under the ADA because he had a major depression which he erroneously characterized as "stress," there is no

evidence in the record to sustain any other definition of "disability" than the one in 42 U.S.C. § 12102(2)(C).

later diagnosed as a major depression.[10] Quiñones, however, fails to present evidence to support the contention that his condition, i.e. "stress," constituted an impairment under the ADA.[11]

Even assuming *arguendo* that Quiñones's impairment rises to the level of a disability under the ADA, he has failed to present evidence to show that the Salvation Army mistakenly believed that he could not perform a wide array of jobs (i.e., was regarded as substantially limited in the major life activity of working). *Bailey,* 306 F.3d at 1169–70 (citing 29 C.F.R. § 1630.2(j)(3)(i)); *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 381–82 (3d Cir.2002); *see also Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 517, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Quiñones's immediate reinstatement after the misunderstanding between him and his supervisors was clarified shows that defendant Salvation Army found Quiñones capable of performing not only a wide array of jobs, but *his* job at the Salvation Army. Since Quiñones bears the burden of proof on the aforementioned issue, his ADA claim must fail.

Quiñones hints that his termination was motivated by the loathsome stereotyping that Congress intended the ADA to eradicate. *Cf.* 29 C.F.R. § 1630(*l*)(2). Plaintiff states that the Salvation Army made a series of unwarranted assumptions about him due to the fact that he took some time off work because he was suffering from stress. Aside from plaintiff's self-serving allegations regarding to unfounded rumors office gossip, there is nothing in the record to support the contention that the rumors led his employer to perceive erroneously that he was handicapped and resulted in his termination. Accordingly, the Court concludes that Quiñones has failed to raise a triable issue with respect to disability under Title I of the ADA.

## II. Plaintiff's claim under Title V of the ADA

"Under Title V of the ADA, it is unlawful to retaliate against an individual because 'such individual had opposed any act or practice made unlawful under the ADA.'" *Cable, M.D. v. Department of Developmental Servs. of the State of Ca.,* 973 F.Supp. 937, 940 (C.D.Ca.1997)(citing 42 U.S.C. § 12203(a)). To state a claim of retaliation under the ADA, Quiñones must show: "(1) that he ... was engaged in protected conduct; (2) that he ... was discharged, and; (3) that there was a casual connection between the discharge and the conduct." *Oliveras Sifre v. Dept. of Health,* 38 F.Supp.2d 91(D.P.R.1999)(citing *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997)).

Defendants have failed to address plaintiff's claims of retaliation in their motion, and the Court finds that Quiñones has set forth enough facts to sustain the retaliation claim. The record shows that Quiñones was discharged after he allegedly made an informal complaint to management regarding the leave of absence he took to attend to his stress-related symptoms.[12] In addition, after Quiñones ques-

---

**10.** In March 2002, almost two years after he was discharged from the Salvation Army, Quiñones was diagnosed as suffering from a major depression by Dr. Juan Rivera Bustamante. (Docket No. 20, Exhibit 8.)

**11.** Stress and/or depression are conditions that *may or may not* be considered impairments under the ADA. *See e.g., Paleologos v.*

*Rehab Consultants, Inc.,* 990 F.Supp. 1460, 1464 (N.D.Ga.1998).

**12.** "In order to prevail on [a] retaliation claim, [a plaintiff] 'need not establish [that] the conduct which [he] opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law.' ... Proof of a retaliation claim is not the same as a direct

tioned the illegality of his discharge, he was immediately reinstated, only to be fired again after he mentioned the possibility of conferring with an attorney.

### CONCLUSION

The Court hereby **GRANTS** defendants's Motion for Summary Judgment (Docket No. 20) as to plaintiff's claim under Title I of the ADA. Quiñones claim of disability discrimination is hereby **DISMISSED WITH PREJUDICE.** However, the Court finds that plaintiff has set forth enough evidence to sustain a claim of retaliation under Title V of the ADA. In addition, the Court will retain jurisdiction over the supplemental state law claims given that there is an independent ground for jurisdiction, i.e., diversity of citizenship between the parties.

IT IS SO ORDERED.

claim of disability discrimination.' " *Foster v. Time Warner Entm't Co., L.P.,* 250 F.3d 1189, 1195 (8th Cir.2001) (citations omitted).